NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 21 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LESLIE A. SCHMITZ, | No. 20-35723 |
| Plaintiff-Appellant, | D.C. No. 1:19-cv-03283-TOR |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Submitted May 4, 2021**
Seattle, Washington

Before: BOGGS,*** BERZON, and MURGUIA, Circuit Judges.

Plaintiff Leslie Schmitz appeals the district court's decision affirming the

Commissioner of Social Security's denial of her application for disability insurance

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*** The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

benefits under the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review the district court's decision de novo and reverse only if the Administrative Law Judge's ("ALJ") "decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citation omitted), *superseded by regulation on other grounds*. "[W]hen the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* at 1111.

1.    The ALJ did not err in determining that Schmitz's impairments did not meet or equal Listing 1.04 for disorders of the spine resulting in compromise of a nerve root, 20 C.F.R. § 404, subpt. P, app. 1, Listing 1.04 (2019). The ALJ based her determination on evidence in the record reflecting unremarkable neurological findings. Schmitz argues that the ALJ erred by relying on an absence of imaging that documented compromise of a nerve root and by misstating the record. Schmitz, however, does not establish that the ALJ erred in finding Schmitz's impairments do not fulfill the listing criteria. Rather, Schmitz advocates for an alternative interpretation of the evidence. Because the ALJ's conclusion is supported by a rational interpretation of the record, we must uphold it. *See Molina*, 674 F.3d at 1111.

2.     Schmitz contends that the ALJ erred by improperly evaluating the medical-opinion evidence from six different sources.

First, the ALJ did not err by failing to consider Dr. Kim's treatment note. In general, an ALJ is tasked with evaluating every medical opinion in the record. 20 C.F.R. § 404.1527(c). But an ALJ is not required to discuss every treatment note. *See Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (per curiam) (explaining that the Secretary does not err in ignoring evidence that is neither significant nor probative). Dr. Kim's "suggestion" that Schmitz limit her activities does not constitute a medical opinion the ALJ was required to consider. *See* 20 C.F.R. § 404.1527(a)(1). Dr. Kim's suggestion was not significant or probative to Schmitz's disability determination because it addressed Schmitz's impairments the week before her scheduled back surgery and noted that her postoperative recommendations would be determined by her surgeon.

Second, the ALJ did not err by giving the medical opinion of Dr. Pellicer, an examining physician, "limited weight." When an examining physician's "opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, Dr. Pellicer's opinion that Schmitz could lift less than ten pounds only occasionally, could not bend, crawl, or kneel, and needed "more frequent breaks" when sitting, walking, or standing for

3

extended periods, was contradicted by other medical opinions in the record. The ALJ explained that Dr. Pellicer's noted limitations were inconsistent with Schmitz's reported ability to do extensive yardwork and were contradicted by the "lack of neurological findings in treatment settings, in which she has displayed a lack of weakness in her upper and lower extremities." A lack of support in the record as a whole is a "specific and legitimate" reason for discounting a physician's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Third, the ALJ did not err by giving the medical opinion of Dr. Burkett, a non-examining physician, "minimal weight." Dr. Burkett opined that Schmitz's impairments met or equaled Listing 1.04. The ALJ rejected this opinion for the same reasons it concluded Schmitz's impairments did not meet or equal Listing 1.04—the evidence demonstrated "unremarkable neurological findings in treatment settings." Schmitz again advocates for a different interpretation of the record, but we may not reweigh the evidence and substitute our judgment for that of the ALJ's where the ALJ's decision is supported by substantial evidence. *See Molina*, 674 F.3d at 1111.

Fourth, the ALJ did not err by giving Advanced Nurse Practitioner Jones's opinion "minimal weight." Because nurse practitioners were not "acceptable medical sources" for claims filed prior to March 27, 2017, *see* 20 C.F.R. § 404.1502(a)(7), the ALJ was required only to provide germane reasons to discredit Ms. Jones's opinion. *Molina*, 674 F.3d at 1111. Ms. Jones opined that Schmitz

4

could not "meet the demands of full time sedentary work," and the ALJ reasoned that Ms. Jones's "check-box form . . . did not refer to any objective basis besides abnormal gait, decreased range of motion, and diminished reflexes" which were "insufficient for the wide array of severe limitations opined by Ms. Jones." Inconsistency with objective medical evidence is a germane reason for rejecting Ms. Jones's opinion. *See Bayliss*, 427 F.3d at 1218; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted).

Fifth, the ALJ did not err by giving Dr. Schmitter's medical opinion "significant weight." Dr. Schmitter testified at Schmitz's hearing that Schmitz "had subjective back symptoms without neurologic findings" and that her impairments did not meet or equal Listing 1.04. Schmitz asserts that the ALJ erred in evaluating Dr. Schmitter's testimony because Dr. Schmitter appeared at times confused about the relevant time period, mischaracterized some relevant evidence, and demonstrated a lack of basic medical knowledge in one instance. Schmitz's objections, however, again ask us to reweigh the evidence. The ALJ was permitted to credit Dr. Schmitter's relevant testimony despite the flaws in his testimony on peripheral issues. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (explaining that an ALJ "could legitimately credit" the testimony of a non-

examining physician who "was subject to cross-examination"). And it is the ALJ's responsibility to determine credibility and resolve conflicts in the medical evidence. *Batson*, 359 F.3d at 1195. Here, the ALJ discussed Dr. Schmitter's opinion and identified evidence in the record that supported his opinion over others. The ALJ's evaluation is supported by substantial evidence, and we may not reweigh the evidence even if we would have reached a different conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ." (internal quotation marks and citation omitted)).

Sixth, the ALJ did not err by giving the medical opinion of Dr. Billings, an examining physician, only "some weight." Schmitz contends that the ALJ failed to list specific reasons for discrediting Dr. Billings's opinion regarding Schmitz's ability to work in a stressful environment and failed to discuss the global assessment of function ("GAF") score that Dr. Billings attributed to Schmitz. But the ALJ determined that Schmitz's combination of impairments "likely prevented work with frequent work setting changes or more than incidental public contact, but does not appear to have materially altered her understanding, memory, concentration, or persistence." Schmitz has not demonstrated how this conclusion is inconsistent with Dr. Billings's opinion or how Schmitz's residual functional capacity, does not incorporate the limitations that Dr. Billings noted. *See Turner v. Comm'r of Soc.*

*Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (explaining that an ALJ need not provide reasons for rejecting a physician's observations that are incorporated into the residual functional capacity). Additionally, while a GAF score may help guide an ALJ's decision, an ALJ is not bound to consider a GAF score. Indeed, the Commissioner has explicitly disavowed use of GAF scores as indicators of disability. 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."). Therefore, Schmitz has not identified any error in the ALJ's evaluation of Dr. Billings's opinion.

3. The ALJ did not harmfully err in discrediting Schmitz's symptom testimony. If a claimant has presented medical evidence of an impairment that could reasonably be expected to cause her symptoms and "there is no evidence of malingering," the ALJ can reject the claimant's symptom testimony "only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1015 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Here, the ALJ gave sufficient clear and convincing reasons to reject Schmitz's symptom testimony, even though not all the ALJ's reasons were proper. *See Batson*, 359 F.3d at 1197.

The ALJ discredited Schmitz's symptom testimony in part because of Schmitz's inconsistent reports of her physical symptoms to different providers and Schmitz's failure to report her struggle with substance abuse during the relevant

7

period. These are proper bases for discrediting a claimant's symptom testimony. *See Smolen*, 80 F.3d at 1284 (explaining the ALJ may consider "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid" to determine whether the claimant's testimony is credible); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (relying in part on the claimant's inconsistent statements about alcohol use to reject claimant's testimony). And the record here supports the ALJ's noted inconsistencies. The ALJ also relied on the lack of objective medical evidence supporting the alleged severity of Schmitz's physical symptoms in reaching its adverse credibility determination. And although never sufficient on its own, a lack of corroborating objective medical evidence is also a relevant factor when assessing the severity of a claimant's pain. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Because these bases are sufficient to support the ALJ's overall adverse credibility determination, we need not address the ALJ's additional improper reasons for discrediting Schmitz's symptom testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." (alterations in original)

8

(quoting *Batson*, 359 F.3d at 1197)).  Therefore, we conclude any errors in the ALJ's assessment of Schmitz's symptom testimony were harmless.

**AFFIRMED.**